UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
DEMARK DIXON,
                                 :
            Plaintiff,               REPORT & RECOMMENDATION
                                 :   and MEMORANDUM & ORDER
       -against-                     06 Civ. 6069 (LAK)(MHD)
                                 :
FEDERAL BUREAU OF INVESTIGATION,
ADMINISTRATIVE APPEAL DEPARTMENT :
OF OFFICE OF INFORMATION AND
PRIVACY and UNITED STATES        :
DEPARTMENT OF JUSTICE,
                                 :
            Defendants.
--------------------------------x

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:


     Plaintiff is an inmate in the federal prison facility at
Otisville, New York. He is serving a 147-month term of imprisonment
for his part in the armed robbery of a branch of the North Fork
Bank at 725 Co-op City Boulevard in the Bronx.


     In October 2004 he filed a request with the Federal Bureau of
Investigation under the Freedom of Information Act, in which he
sought disclosure of a copy of the bank surveillance videotape that
showed him as present in the bank approximately two hours before
the robbery took place, as well as copies of the still photographs
derived from the videotape that were used at his trial. Following
the FBI's initial denial of his request and its delay in deciding
his administrative appeal, on August 9, 2006 he filed the current

1

lawsuit in the guise of a petition for a writ of mandamus.

Having delivered copies of the videotape and photographs to the plaintiff in November 2006, the defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) as moot. Plaintiff has opposed the application and, by virtue of a series of his own motions, seeks to amend his pleading in order to expand the scope of the relief that he requests and also, in one instance, asks for summary judgment. He also asks for appointment of counsel.

For reasons to be noted, we recommend that defendant's motion to dismiss be granted and that plaintiff's various motions to amend and for summary judgment be denied. We also deny plaintiff's application for appointment of counsel.

A. The Factual and Procedural Record

In 1997 a Southern District grand jury charged Dixon and other defendants with conspiracy, bank robbery and firearms violations. Following a jury trial before Judge Brieant, in December 1997 he was convicted on all charges, based in part on his appearance in a bank security videotape that was running approximately two hours

before the robbery.[1] Judge Brieant thereafter sentenced him to a prison term of 147 months. Plaintiff appealed his conviction to the Second Circuit, arguing that the trial court had erred in denying a post-conviction motion for a new trial premised on newly discovered evidence concerning one of the testifying co-conspirators. The Second Circuit affirmed on December 23, 1998, noting "the strong evidence of Dixon's guilt." <u>United States v. Rahman</u>, 1998 WL 907042 *1 , 166 F.3d 1202 (2d Cir. 1998).

In March and September 1999 Dixon sought relief from his conviction in papers that Judge Brieant deemed to be motions under 28 U.S.C. § 2255 and Fed. R. Civ. Proc. 60(b). (Decl. of Ass't U.S. Att'y Daniel P. Filor, executed Dec. 18, 2006, at Exs. B, C). Among his arguments, he asserted that he was in fact not the person portrayed in the videotape and photographs and that his attorney had been ineffective in stipulating to certain facts relevant to the identification. He also argued that he had needed an expert to testify at his trial that he was not the person shown in the videotape and in the derivative still photographs. Judge Brieant denied both applications, noting that the jurors had had the videotape and photographs derived from the tape and were able to

---

[1] The Government also called two of Dixon's self-confessed co-conspirators as witnesses, and they testified to his participation in the robbery. <u>United States v. Rahman</u>, 166 F.3d 1202, 1998 WL 907042, *1 (2d Cir. 1998).

compare them with Dixon's appearance. (Id.).

It appears that Dixon made two later applications for similar relief to the Second Circuit. That court denied both, by orders dated August 29, 2000 and May 22, 2001, respectively. (Decl. of Ass't U.S. Att'y Daniel P. Filor, executed Feb. 2, 2007, at Exs. A, B).

On or about October 25, 2004, plaintiff made an application to the FBI under the Freedom of Information Act, 5 U.S.C. § 552(a), asking for copies of the North Fork surveillance videotape and photographs derived from it and used at his trial. (Pl.'s Mandamus Pet. at p. 3 & Ex. A). The FBI initially rejected plaintiff's request on March 11, 2005, invoking exemptions b(7)(C) and (D) of the Act. 5 U.S.C. §§ 552(b)(7)(C) & (D). (Id. at p. 3 & Ex. B).[2] Dixon then filed an administrative appeal, which the FBI failed to respond to for an extended period of time. (Id. at p. 3 & Ex. C).

On or about July 12, 2006 plaintiff forwarded a complaint, titled "Writ of Mandamus to Compel" to the Pro Se Clerk of this Court. In that pleading he sought relief requiring the production of the videotape and photographs as well as action by the FBI on

---

[2] These exemptions cover undue invasions of personal privacy and disclosure of the identity of confidential informants.

4

his appeal. (<u>Id.</u> at p.2). On September 6, 2006 Dixon filed an "Amended Writ for Mandamus." In that pleading he added a reference to the Citizens Protection Act, 28 U.S.C. § 530B, included further explanations as to why he needed the materials and why he believed that the FOIA exemptions cited by the FBI did not apply, and demanded production of the requested items. (Pl.'s Amended Writ at 2, 4-9).

In November 2006 the FBI finally consented to produce the requested materials to plaintiff. Defendant's counsel represents that on November 21, 2006 he arranged for the transmission to plaintiff of copies of the videotape and thirty photographs. He also reports that on November 27, 2006 he spoke by telephone with plaintiff, who confirmed that he had received and reviewed the items in question and that he agreed that those materials corresponded to his FOIA request. (Filor Dec. 18, 2006 Decl. at ¶¶ 3-4). That same day he signed a stipulation of dismissal, which the defendant's attorney had evidently sent to him with the videotape and photographs. (<u>See</u> Pl.'s "Motion for Stay or Hold on Stipulation and Order of Dismissal" dated Nov. 28, 2006, annexed partially signed stipulation and order).

By November 28, 2006 plaintiff apparently had a change of heart about the proposed dismissal of the lawsuit, and he therefore

prepared a motion to, in effect, vacate his signed stipulation, and to grant him leave to amend his complaint to seek additional relief. (<u>Id.</u> at pp. 1-3). In support of this application plaintiff stated that, in order to make effective use of the videotape and photos to disprove his presence in the bank during the robbery, he would need the services of an expert witness. (<u>Id.</u> at p.2).

In the wake of this filing, defendant moved on December 18, 2006 to dismiss the case for mootness and also opposed plaintiff's motion to amend. (<u>See</u> Def.'s Mem. of Law at 5-8). The very next day plaintiff filed a motion entitled "Motion for Leave to File Second Amended Writ", in which he conceded having received the requested FOIA materials but asked for leave to amend his pleading to assert a demand for appointment of a forensic photo expert to examine the materials in order to establish that plaintiff was not the man depicted in them. (Pl.'s Motion for Leave, dated Dec. 13, 2006, at p.1; unsworn Aff. of Demark Dixon, executed Dec. 13, 2006, at ¶¶ 4-7). Defendant opposed this motion as futile. (Dec. 28, 2006 letter to the court from Ass't U.S. Att'y Daniel P. Filor).

In January 2007 plaintiff filed papers opposing the dismissal motion and moving as well for what he described as leave "to obtain the Courts [sic] set of blown up duplicated color copy [sic] of the surveillance video tape, and thirty photo's [sic]". (<u>See</u> Motion for

Leave, dated Jan. 18, 2007, at p. 1; Pl. Motion Responding to Def.'s Dismissal Motion). Although not entirely clear, this request appears to refer to the exhibits placed in evidence at plaintiff's criminal trial and, according to plaintiff, represents his effort to get these items before Judge Brieant so that he may again consider whether Dixon was incorrectly convicted based on an erroneous assumption that the videotape shows him rather than someone else. (Motion for Leave at p. 2).[3] As for jurisdiction, plaintiff invoked the Citizen's Protection Act, 28 U.S.C. § 530B. (Pl.'s Motion Responding to Def.'s Dismissal Motion at pp 2-3 & Ex. A). Defendant opposed this motion to amend, and in the same submission, dated February 2, 2007, it reiterated its application to dismiss the complaint. (Def.'s Reply Mem. at 2-8).

In a set of motion papers served some months later, in April of this year, plaintiff sought again to expand the scope of the relief for which he was asking in this lawsuit. In addition to reiterating his request for leave to amend (see Pl.'s Third Motion Requesting For [sic] Leave to File Second Amended Writ of Mandamus), he also requested an order requiring the FBI to provide an affidavit stating that he was not the person pictured in the

---

[3] This court has not received any such materials. We have only the motion papers and exhibits proffered by the two litigants in connection with plaintiff's pleading and the parties' motion practice.

7

surveillance videotape, or alternatively that it hire a specified forensic analyst, named Tom Owen, to analyze the tape. (Pl.'s Motion, dated April 24, 2007, "to Obtain Forensic Analysis Under Informa [sic] Pauperis Status" at 1-2).[4] He also asked that the FBI be required to pay for the services of Mr. Owen since he and his family were unable to do so. (Id. at p. 2; see also April 24, 2007 letter to the Court from Demark Dixon). Finally, on April 24, he filed an Application For the Court to Request Counsel. (Pl.'s App. For the Court to Request Counsel). Not surprisingly, defendant has opposed all of these requests. (May 2, 2007 letter to the Court from Ass't U.S. Att'y Daniel P. Filor; April 20 2007 letter to the Court from Ass't U.S. Att'y Daniel P. Filor).

Since April plaintiff has sent the court a series of follow-up communications and applications, most of which reiterate his previously articulated requests for relief. (See June 15, 2007 letter to the Court from Demark Dixon, annexing "Motion for Summary Judgment" dated June 15, 2007; July 9, 2007 letter from Demark Dixon to the Hon. Charles L. Brieant, requesting his letter of recommendation to this court in favor of plaintiff's motions to amend). In addition, and most recently, he sent the court what he

---

[4] Dixon originally noted his desire to retain Mr. Owen in a letter to the court dated March 8, 2007. He did not formally seek court authorization to compel the FBI to hire this individual until his late April 2007 motion.

labeled an "Ex Parte Motion to Request Court Authorization for FBI Laboratory Photogrammetry Analysis to Establish Actual Innocence". Invoking 18 U.S.C. § 3006A(e)(1), which permits a criminal defendant to make an ex parte application for services other than counsel, he is asking that the FBI be ordered to provide a laboratory analysis comparing six of the photographs previously turned over to him by the defendant--which plaintiff and his family assertedly arranged to enlarge--to three photographs of himself. (Ex Parte Motion at 1; Pl.'s Mem. of Law at 2-4).[5]

ANALYSIS

We first address defendant's motion to dismiss and then turn to plaintiff's various motions to amend and for other relief.

A. Defendant's Motion

Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(1) based on the contention that its production to plaintiff of the materials that he had sought from the FBI under FOIA moots his claim. On such a motion we may consider evidence proffered by affidavit in

---

[5] Consistent with plaintiff's reliance on the provisions of section 3006A(e)(1), he never served this last motion on the defendant's attorney. Because this motion is not made in the context of a criminal proceeding, we have since provided a copy to counsel.

addition to the allegations of the pleadings. <u>See</u>, <u>e.g.</u>, <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986). The record in this case unquestionably demonstrates that plaintiff's currently pled claim under FOIA is moot.

As noted, in November 2006 defendant's counsel sent plaintiff the very materials that he had sought in his FOIA agency request. Plaintiff has repeatedly acknowledged this fact. (<u>E.g.</u>, Pl.'s unsworn Dec. 13, 2006 Aff. at ¶¶ 3-4). That production, even though it postdated the filing of plaintiff's lawsuit, moots his current claim since the only relief that he seeks in the operative pleading is the disclosure of those materials. <u>See</u>, <u>e.g.</u>, <u>Doe v. Gonzales</u>, 449 F.3d 415, 420-21 (2d Cir. 2006); <u>Matter of Wade</u>, 969 F.2d 241, 248 (7th Cir. 1992) ("In FOIA cases, mootness occurs when requested documents have already been produced"); <u>DiModica v. United States Dep't of Justice</u>, 2006 WL 89947, at *3-4 (S.D.N.Y. Jan. 11, 2006) (dismissing complaint as moot where Department of Justice produced document responsive to FOIA request).

### B. <u>Plaintiff's Motions to Amend and for Summary Judgment</u>

In a series of motions, plaintiff has sought leave to amend his pleading to expand the scope of the relief that he seeks in this lawsuit. In these proposed amendments, he asks that the FBI be

required to acknowledge his innocence or pay for hiring an independent forensic expert to examine the videotape and photographs in order to determine whether he is in fact portrayed in those materials. He also requests that the court provide him with its copies of the videotape and photographs. In addition, he requests, in what he styles as an ex parte application under 18 U.S.C. § 3006A(e)(1), that the FBI be required to conduct a laboratory analysis of the enlargements that he has obtained from the photographs supplied to him by the FBI. Finally, he seeks appointment of an attorney to represent him in this proceeding and to work with the forensic expert whose services he hopes to have provided to him.

Rule 15(a)(2) of the Federal Rules of Civil Procedure specifies that courts should "freely give" leave to amend "when justice so requires." As explained by the Supreme Court, such leave is to be liberally granted:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, "be freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); accord, e.g., United

States ex rel. Mar. Admin. v. Continental Ill. Nat'l Bank & Trust
Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir. 1989).

In his "Third Motion Requesting for Leave to File Second
Amended Writ of Mandamus," plaintiff appears to argue that the court
should allow him to amend his complaint because his first two
motions for leave to amend were filed before the defendant's motion
to dismiss. To the extent that plaintiff contends that Fed. R. Civ.
Proc. 15(a) requires the court to grant him leave to amend his
complaint if no responsive pleading has yet been filed, plaintiff
misapprehends the meaning of the Rule. Rule 15(a) allows plaintiffs
to amend once without the permission of the court before a
responsive pleading is served, but requires written consent of the
adverse party or leave of court for any additional amendments. Fed.
R. Civ. Proc. 15(a). Plaintiff amended his original "Writ of
Mandamus to Compel" by filing his "Amended Writ of Mandamus" on
September 6, 2006 without leave of court, but cannot do so again
unless we grant him leave to amend.

As defendant properly notes, one circumstance that justifies
denial of a motion for leave to amend is a determination that the
proposed amendment would be futile. See, e.g., Tocker v. Philip
Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006); Marchi v. Board of
Coop. Educ. Services, 173 F.3d 469, 477-78 (2d Cir. 1999). That is

the case here with regard to each of the plaintiff's proposed amendments.

Plaintiff's original lawsuit invoked the provisions of FOIA, which, in pertinent part, authorizes a court to order a government agency to provide to a requester documents from the agency's records if they do not come within the scope of any of a series of statutorily defined exemptions. 5 U.S.C. §§ 552(a)(4)(B) & (b). Plaintiff has already concededly received that relief by virtue of the FBI's transmission to him of the requested materials.

The various forms of relief newly requested find no source in the FOIA, which, as noted, is limited to disclosure of records by executive agencies. The statute does not authorize, much less mandate, an agency to make any representations about a requester's guilt or innocence, to provide funding for the requester to hire forensic or other experts to determine whether the evidence that he has in hand is exculpatory, or to conduct forensic tests itself.

In seeking to define a legal basis for requesting such relief in this case, plaintiff repeatedly invokes the so-called Citizens Protection Act, 28 U.S.C. § 530B et seq.. This statute does not help plaintiff's case.

The Act, titled "Ethical standards for attorneys for the Government", states in pertinent part only that "[a]n attorney for the Government shall be subject to State law and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). It further provides for the Attorney General to issue rules of the Department "to assure compliance with this section." 28 U.S.C. § 530B(b).

In seeking to invoke this provision, plaintiff is in effect suggesting that the Act offers an implied private right of action to aggrieved persons and that its terms apply to compel the FBI in this case to provide assistance to him, as a convicted defendant, in seeking to demonstrate his innocence. Neither proposition is sustainable.

This statute contains no suggestion that it is intended to provide an independent right of action to members of the public. Indeed, it simply directs the Attorney General to prescribe appropriate rules to implement its requirement of ethical behavior. Consistent with that statutory mandate, the Department's resulting regulations lay out a set of internal guidelines and Departmental procedures for dealing with possible ethical violations, and then

go on to specify that they are not intended to create any independent right in the public enforceable by litigation against the Government.[6]

To allow a lawsuit against the Government in any such circumstance, Congress would have been required to waive the sovereign immunity of the United States by legislation, and to do so in clear and unambiguous terms. See, e.g., Lane v. Pera, 518 U.S. 187, 192 (1996)("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text[.]"). Since the Act is silent on any such matter, sovereign immunity would alone preclude assertion of a statutorily-based claim against the FBI. In any event, sovereign immunity aside, the failure of the legislation to suggest any intent by the Congress to create a

---

[6] 28 C.F.R. § 77.5 states in relevant part:

The principles set forth herein, and internal office procedures adopted pursuant hereto, are intended solely for the guidance of attorneys for the government. They are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party to litigation with the United States, including criminal defendants, targets or subjects of criminal investigations, witnesses in criminal or civil cases (including civil law enforcement proceedings), or plaintiffs or defendants in civil investigations or litigation; or any other person, whether or not a party to litigation with the United States, or their counsel; and shall not be a basis for dismissing criminal or civil charges or proceedings or for excluding relevant evidence in any judicial or administrative proceeding.

private right of action and the specific provisions of the Department's regulations that preclude any such assumption amply demonstrate that plaintiff cannot satisfy the normal requirements for recognition of an implied private right of action. See, e.g., Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007)(specifying that courts may not ordinarily imply a private right of action unless Congress's intent to create one is explicit in the text and structure of the statute); accord Fleming v. Westfall, 2005 WL 1116060, *2 (D.N.J. May 10, 2005)(holding that section 530B does not create a private right of action).[7]

Plaintiff's alternative reliance on the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1) for several of his most recent applications -- to compel the FBI to pay for his forensic expert or to require the Bureau to conduct laboratory tests on some of the photographs

---

[7] Plaintiff erroneously annexes to his papers a House bill that reflects a somewhat different and far more detailed proposed Citizen's Protection Act than that which was eventually enacted in the quoted form. (Pl.'s Amended Writ at Ex. H (H.R. 3396, 105th Cong. (as discussed by the House of Representatives on August 5, 1998))). This bill, however, equally demonstrates the baselessness of plaintiff's effort to invoke the Act as a ground on which to obtain judicial intervention. The bill does specify that the Attorney General must enact a rule prohibiting Government lawyers from "fail[ing] promptly to release information that would exonerate a person under indictment" -- apparently the theory under which plaintiff seeks relief -- but the bill also outlines a detailed administrative structure for dealing with complaints of ethical violations and makes no mention of a possible judicial remedy for aggrieved persons. (Id.).

and possibly for appointment of counsel -- is also misplaced. A person whose criminal conviction has been finalized might still be eligible for the services authorized under that section, provided that they are in aid of a pending habeas petition under sections 2241 or 2255, see 18 U.S.C. § 3006A(a)(2)(authorizing appointment of counsel in habeas proceedings), but we note that such a request must be addressed to the court in which the criminal or related habeas proceeding is pending. As the cited provision states:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1); see also S.D.N.Y. Plan for Furnishing Representation Pursuant to Criminal Justice Act of 1964, ¶ X. Hence any such application would have been required to be made to Judge Brieant in the context of the criminal proceeding against Dixon or a post-conviction motion, and not to this court as an add-on to a a FOIA lawsuit.

More generally, all of plaintiff's proposed amendments seek, in effect, to challenge the validity of his conviction and current confinement. That type of claim is reserved for a habeas

17

proceeding, which must be addressed to the court in which the petitioner's conviction was obtained and his sentence imposed. See 28 U.S.C. § 2255 (authorizing petitioner to seek habeas relief from "the court which imposed the sentence"); see, e.g., Poindexter v. Nash, 333 F.3d 372, 376-77 (2d Cir. 2003).[8] Moreover, as we have noted, the plaintiff has filed several previous habeas applications before Judge Brieant, which he has rejected. As a result, any further such application by plaintiff must be treated as a second petition under 28 U.S.C. § 2244(b), and hence Dixon must first seek leave to file from the Court of Appeals for the Second Circuit. 28 U.S.C. § 2244(b)(3).[9]

---

[8] Insofar as plaintiff, in one variant of his proposed amendments, seeks release by the court to him of its asserted copies of the videotape and photographs, we find no possible legal basis for such a legal claim. FOIA does not encompass production of documents by the judicial branch, and in any event if the court has retained exhibits, such an application would have to be made to Judge Brieant, not to this court. Finally, we note that plaintiff has repeatedly conceded that he already has the pertinent videotape and enlarged photographs (Pl.'s Motion for Leave to Obtain the Courts [sic] Blown Up Duplicated Copy of Surveillance Videotape, and Thirty Photo's [sic] at 2; Pl.'s Motion for Summary Judgment at 1-2; Pl.'s Motion for Leave to File Second Amended Writ at 2; Pl.'s Motion for Stay or Hold on Stipulation and Order of Dismissal at 1-2), thus entirely undercutting any possible claim that he has a need for whatever documents are assertedly held by the court (and presumably not available from its public files).

[9] Indeed, as we have observed, plaintiff has sought precisely such relief on two occasions from the Second Circuit, in 2000 and 2001, and that Court has each time rejected his application. (Filor Feb. 2, 2007 Decl. at Exs. A, B).

18

In sum, we conclude that plaintiff's various motions to amend his pleading should be denied inasmuch as the proposed amendments would be futile.

As for the motion that plaintiff labels as one for summary judgment, he simply reiterates his demand for the relief that he is seeking by way of his motions to amend. Since, as we have seen, these demands have no legal or factual basis, his application for summary judgment on these proposed new claims must also be denied.

C. Appointment of Counsel

Plaintiff has sought appointment of an attorney, apparently to assist in proving his innocence. (See Pl.'s App. for the Court to Request Counsel; Pl.'s Motion For Summary Judgment at p. 1). Because of Dixon's pro se status, we liberally interpret his application as also seeking appointment of an attorney under 28 U.S.C. § 1915(e)(1) simply to represent him in this FOIA lawsuit. We deny that application.

As the Second Circuit has repeatedly observed, a prerequisite to the granting of such relief is a determination by the court that there is some potential merit to the claims asserted by the plaintiff. See, e.g., Berry v. Kerik, 366 F.2d 85, 88 (2d Cir.

2003) (referring to "requirement of "likely merit"); <u>Ferrelli v. River Manor Health Care Ctr.</u>, 323 F.3d 196, 203-06 (2d Cir. 2003). For the reasons that we have already explored, we conclude that plaintiff's one claim in this case has been mooted by the production to him of the materials that he sought under the FOIA, and that his proposed new claims for relief are all legally insupportable. Accordingly, there is no basis for the continuation of this litigation, and hence no justification for seeking the voluntary services of a <u>pro</u> <u>bono</u> attorney.

<u>CONCLUSION</u>

For the reasons noted, we recommend that defendant's motion to dismiss for mootness be granted, and that plaintiff's various motions to amend and for summary judgment be denied. We also deny his motion for appointment of counsel in this case. Finally, since this lawsuit should be dismissed, we deny plaintiff's application to consolidate this litigation with a new section 2241 petition he has apparently filed elsewhere. (<u>See</u> June 15, 2007 letter to the Court from Pl.).

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall

be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Lewis A. Kaplan, Room 1310, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

**DATED: New York, New York**
**December 28, 2007**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation and Memorandum and Order have been mailed today to:

Mr. Demark Dixon
# 48274-053
Federal Correctional Institution
P.O. Box 1000
Otisville, New York 10963

Daniel P. Filor, Esq.
Assistant United States Attorney
 for the Southern District of New York
86 Chambers Street
New York, New York 10007